and 09-1478, Alford v. Greene. General Kroger. Mr. Chief Justice, and may it please the Court, in Pearson v. Callahan, this Court gave the lower federal courts discretionary power to decide substantive questions of constitutional law and qualified immunity cases in order to further the development of constitutional precedent. If it is valuable for the lower courts to decide these cases, then it is essential that this Court be able to review those decisions in order to ensure that they are accurate. For this reason, the case is justiciable and should be reviewed on the merits. Turning to the merits of this case, the Court of Appeals held that it was not so fast. Kennedy, of course, there are two issues here, and I hope we do get to this. Can you tell me of Camreta's current occupation? Does the record establish that? Does the record tell us what Camreta is doing now? The record does not, Your Honor, because the mootness issue was raised relatively late in the proceedings. But I'm aware of what his current occupation is. Which is? He is a child protective services worker with the Oregon Department of Human Services. Scalia, when I was about to ask you this, I can agree with you that where there is a determination on the merits, it should be reviewable, but could still disagree that it's reviewable where the requirements for Article III are not met, that is, where there is really no justiciable controversy between the parties. What is the interest of the parties who were victorious here? Your Honor, the interest of Mr. Camreta is the ongoing harm he has in his job. Under the Ninth Circuit's decision, he is forced to either forego a regular and recurring duty of his job, which is to interview potential child victims in school, or to face liability. For doing so. Why would he face liability? Because he didn't have the opportunity to challenge that decision, the Fourth Amendment decision. Therefore, it would have no preclusive effect on him. A party who doesn't have that, if there are alternative holdings and you lose on one, and you win on the other, you're not precluded by the loss because you didn't have the opportunity to raise it on appeal. So why would Camreta be precluded? Why would he face punitive damages, as you just suggested? Your Honor, the Ninth Circuit opinion does apply to Mr. Camreta, and the Court specifically advised Mr. Camreta and others in his position that they are on notice that in-school interviews of students that require a seizure require a warrant. And thus, the Ninth Circuit decision does have a precedential effect and impacts Mr. Camreta. But it takes two to tango, and a case or controversy requires somebody on the other side who cares a fig about the outcome. And here, S.G., who was the young woman affected in the case, has moved to another State and making it virtually certain that she'll never confront this situation again. She doesn't care what the result of this thing is. Besides which, I think she's, what, 17 years old or so now? It's impossible that she will be confronted with the same situation. Your Honor, I disagree that S.G. has no ongoing concrete stake in the outcome of this case. In footnote 20 of the Respondent's brief on page 33, the Respondent notes that they have filed a motion in the United States district court to bring their Fourth Amendment claim against Deschutes County, a potential party that has no qualified immunity as a defense. And obviously, the legal viability of that claim against Deschutes County will depend very much on the ruling on the merits of this Court. If this is a Monell claim and it's the district court has held its ruling, I take it in abeyance, pending a ruling for reinstatement of that claim, pending our decision here? That is correct, Your Honor. The district court ruled that it was premature until these proceedings were concluded. Ginsburg. Well, why isn't the answer, then, that that's the right case to take up? Because in this case, we have a plaintiff who is not going to be confronted with this situation again and who has put herself out of the running for damages because she didn't challenge the qualified immunity ruling. So she has no stake in any monetary relief from this claim. She has no continuing the what has happened to her, happened to her at age 9, will never happen again now that she's past 18. So she hasn't, if she came to court today with her case as an 18-year-old, she would have no case or controversy. It just seems like the whole case has evaporated. She has no claim. She did have a claim for money damages, but she relinquished that. So what genuine controversy is before us? Your Honor, the controversy remains the Fourth Amendment claim, which is the Respondent is seeking to pursue in the United States district court. And that gives the Respondent here a direct financial stake in the viability of their Fourth Amendment argument. And the Court has no claim. Sotomayor, I'm sorry. Isn't that the county's claim? How Camerata does his job, that claim doesn't belong to him. It belongs to the entity who is telling him how to do his job. And so why don't we go back to Justice Ginsburg's question of why isn't the Monell situation the proper case? Because there it's the party interested in how its officers will do their job at its directive. It has the case and controversy at issue. Not S.G. Right now, she's never going to be investigated again. She's in another State. I understand that she doesn't even ever want to return to Oregon for probably fairly good reasons, at least from her perspective. So, again, why isn't this the interest of the county, not the interest of the officer? Your Honor, in Arizonans v. Arizona, the Court recognized that the employee in that case had an interest in how she was able to conduct her job. The Court decided that the case was moot because she had resigned from her position with the State. But there was no objection to her standing because she was a public employee that wanted to perform her job in a particular way because she was required to under State law. And here the plaintiff in Arizona, as we were talking about, a plaintiff still had a viable claim, right? That is correct, Your Honor. Kagan. General Kroger, I don't think that the question here is really a standing question. It's really whether there's a controversy between this particular plaintiff and this particular defendant, such that a judgment in this case would actually affect the legal relationship between the two, between the particular plaintiff and the particular defendant. So how would it do that? How would a legal judgment in this case affect the legal relationship between this plaintiff and this defendant? Your Honor, the Mr. Camretta remains a party below, and it's possible that the Court's rulings on the Fourth Amendment merits may impact the Fourteenth Amendment claims that are being made against Mr. Camretta that are alive and in controversy below. Moreover, this case, even if one strips out the ongoing motion that's been made in the case of Erie v. Papps A.M., where the Court found that there was standing to bring the case and it was not moved. And so there does seem to be an active case or controversy that is equivalent to that that was present in Erie v. Papps A.M. How does it affect the Fourteenth Amendment? There's a Fourteenth Amendment claim pending below? Yes, Your Honor. And what's the substance of that? It is a claim of Mrs. Green to interference with familial rights as a result of certain actions by Mr. Camretta and other defendants. But that didn't have to do with the school search, or the school seizure. That is correct, Your Honor. So in this case presents the question about was this unreasonable. That, what's left in the case, has to do with the mother's claim and it has to do with putting the girls in custody, right? That is correct, Your Honor. Counsel, if we were to hold this case was moved, what would you think the appropriate disposition of the case would be? Your Honor, I believe that if the Court determined that this case was moved, the appropriate remedy would be pursuant to Munsingware to vacate the Ninth Circuit decision. Well, you don't really want that because the Ninth Circuit granted qualified immunity. What would be what would we be vacating? They haven't rendered a judgment on the search warrant issue. That is correct, Your Honor. What I think the appropriate remedy for the Court would be would be to effectively vacate the opinion or decision on the Fourth Amendment claim. Scalia Make you happy, won't it? Won't that make you happy? Yes, Your Honor. The the the I think the only difficulty with that as a as a outcome of the case is it undercuts the logic of the Pearson decision. It doesn't just do that. Is Mr. Camretta in any more comfortable position when he knows that the Ninth what the Ninth Circuit thinks on this issue and he just has to wait till there's another case when they can impose the view that they've already spelled out? I know as a technical matter, it's not binding, but if you're Camretta, do you say, well, the Supreme Court vacated that decision, so I can go ahead and do this again and not have to worry about personal liability? You're correct, Your Honor. It would place Mr. Camretta and other child protective services workers in the Ninth Circuit. Different panels on the Ninth Circuit aren't there? Yes, Your Honor. And they don't all hold the same thing, fortunately, do they? They do not, Your Honor. They're supposed to file circuit – follow circuit precedent, aren't they? That is correct, Your Honor. But an opinion that is vacated is not circuit precedent, is it? It is not, Your Honor. Mr. Camretta would be protected. He would presumably still be entitled to qualified immunity because a vacated alternative holding certainly could not really establish something, I would assume, but municipalities, if they continue to participate in questioning of this nature, would not be protected, isn't that right? That is correct, Your Honor. What have the – what has Oregon done in response to this Ninth Circuit decision before it said that the caseworkers could have this kind of interview with a child where there was a suspicion of abuse? Was there any change in practice in Oregon in response to the Ninth Circuit's decision? Your Honor, that is not on the record, but I would be happy to respond. The State of Oregon provided legal advice advising Child Protective Services workers to attempt to avoid anything that would be a seizure in a school, and in cases where that would pose no risk of danger to the children, to seek consent of a parent before conducting an interview. Nevertheless, that legal advice puts a significant burden on the Child Protective Services workers to do their utmost to protect Oregon's children. Sotomayor, do you think that the same approach you are following here would apply if the investigation focused on the student rather than a third party? Would in those cases a warrant have to be obtained? Your Honor, I think in those cases, because parental consent is a viable alternative where the allegation is a child is being abused by another child. No, no, not another child. It could be anything. We think the child is, you know, selling drugs, obviously not a 7-year-old, but someone else in the school is involved in illegal activity, him or herself. Your Honor, I believe the child abuse context is somewhat unique in that there are very few ways to investigate properly child abuse without speaking to the only witness that's typically available in the case, and that is the child. So you think it would be a different rule if we're talking about some other criminal activity? The father is selling drugs, and you think the child might have some evidence or at least be willing to talk about that. Do you need anything other than reasonableness in that case? Your Honor, it would be the same reasonableness standard that would apply, but I think the courts might reach different conclusions about what would be reasonable on those surfaces. Kennedy, do you agree that search, let's strike that, that seizure under the Fourth Amendment is the relevant category here? Absolutely, Your Honor. You agree that the child was seized? Yes, Your Honor. We concede that the child was seized. What happens if the teacher tells the student who's misbehaving on the playground, go back into the classroom, you can't, you sit there by yourself, you can't be part of recess, is that a seizure? No, Your Honor, I disagree that that would be a seizure. What made this a seizure, the fact that it wasn't a teacher? Your Honor, the reason we conceded the issue of seizure is we are here on summary judgment, and we took the facts as alleged, which involved transporting the student inside the school. Well, but I'm asking for your view of the proper category to apply in these cases. And if it is a seizure, then it's just a question of reasonableness. We'd look at all the circumstances. That is correct, Your Honor. Mr. Chief Justice, I'd like to reserve the balance of my time. Thank you, counsel. Ms. Kruger. Mr. Chief Justice, and may it please the Court, a number of the questions this morning have focused on the question whether a live case or controversy remains because Respondent has chosen not to challenge the Ninth Circuit's qualified immunity ruling. And so purportedly has no continuing stake in the resolution of this controversy. We think that that's not correct for the reasons General Kruger has given, but it's also not an irreducible minimum of this Court's jurisdiction to correct the mistake that the Ninth Circuit made in this case. I have two. Ginsburg. Let's go back one step. Does she have any viable claims now? This is not a capable of repetition, evasive of review? Well, two responses, Justice Ginsburg. First, as General Kruger mentioned, she has a continuing interest in how this Court resolves this controversy because of her attempt to bring the same Fourth Amendment claim against Deschutes County. But setting that aside, this Court hasn't universally required that as a prerequisite to exercising its jurisdiction. I think there are two examples that help to illustrate the point. The first is the City of Erie v. Papps AM case, in which this Court decided to review a State court injunction entered in favor of a plaintiff who no longer had what we would think of as an Article III stake in the case by the time the case reached this Court. The plaintiff in that case had left the nude dancing business and had affirmatively stated that he had no intention to return. The Court nevertheless reached the merits of the State court decision that was on review because to do otherwise would be to saddle the City of Erie with an ongoing injury. There was a dissent in that case, wasn't there? There was indeed a dissent in that case. But I would note that there was also a dissent from the denial of cert in Bunting v. Mellon in which very much the same situation was presented. The cadets who brought the challenge to the VMI supper prayer that was at issue in that case had graduated from VMI by the time this case reached this Court. And I think as you quite properly noted in your dissent from the denial of review in that case, for this Court to essentially insulate those types of constitutional rulings from review would be to undermine the very purposes for which this Court was. Kagan. Ms. Kruger, how does this situation, the qualified immunity situation, differ from a wide variety of other situations in which we might not be able to get to the underlying constitutional ruling? For example, in any case where there is a constitutional ruling, but also a harmless error ruling, or in a Sixth Amendment case where there are standards about ineffective assistance of counsel, but then a finding that there is no prejudice. In all of those kinds of cases, the underlying substantive ruling might be insulated from our review. How would you say that the qualified immunity situation is different, and how would you be able to cabin this rule? The reason we think the qualified immunity situation is different and presents a set of exceptional circumstances that warrant an exception to the usual prudential rule is because the qualified immunity situation is one in which this Court has encouraged courts to undertake these kinds of constitutional rulings for the purpose of changing the legal landscape going forward, for the very purpose of establishing the law so that individuals, even though they are engaging in conduct that isn't going to be unconstitutional. Kagan Presumably in every case, excuse me, presumably in every case in which a court does these paired rulings, if you will, doesn't just say that the error was harmless, but says that there was an error, there is a purpose to clarify the law. How is this different, once again? I think that in this situation what we have is not just a preview of how the court of appeals would decide the case subsequently in a case in which it was actually necessary to reach a certain judgment. What we have is a decision that changes the legal landscape going forward. It establishes the law such that qualified immunity will not be available in the next case, and it means that people like Petitioner Camretta and other child protective services workers who are doing their best to protect children from abuse are now on notice that if they attempt to detain temporarily a child in school for the purposes of trying to confirm or dispel a reasonable suspicion of child abuse without a warrant supported by probable cause, that they will invite lawsuits that would put them on the line for personal monetary damages. Scalia But that wouldn't be the case if the opinion were vacated under Munsingwear. Kagan That's true, Justice Scalia, and I think that if that's the disposition that this Court thinks is appropriate, we would certainly be happier with that than a rule that says that an incorrect constitutional ruling. Roberts It would be a partial vacator, right? The Court's done that before, hasn't it, where we vacate part of a decision under Munsingwear? Kagan That's correct, Mr. Chief Justice. But I would note that a vacator rule would come with certain costs that I think this Court should keep in mind as it decides what the appropriate disposition of this case is. The reason that Respondent has so vigorously objected to that disposition is because it is inconsistent in some ways with the very reason for permitting courts of appeals to undertake this kind of constitutional determination in the first place. It undermines the development of the constitutional law if this Court simply wipes the slate clean but doesn't exercise its own authority to clarify the law by correcting what the Ninth Circuit has done. And I think as the Chief Justice has quite correctly pointed out, it also does nothing to dispel the cloud of uncertainty that hangs over individuals within the territorial jurisdiction of the Ninth Circuit. Roberts Well, I'm not so sure he was correct. The ---- If it's vacated, it indicates that there is no established law in that question, and it seems to me Camerata would be free to do what he considered appropriate under the circumstances. And if somebody tries to impose personal liability on him, it seems he has an even stronger case than he might have before. Kagan I think that's correct, Mr. Chief Justice. And I think for that reason, we would not object to that disposition in this case. We would just observe that that disposition is one that does not sit particularly comfortably with the reasoning of Pearson and the line of cases that comes before it, that recognizes that the reason why we encourage courts of appeals to undertake these determinations in the first place is to promote the development of constitutional law and to ensure that the law doesn't remain not clearly established in perpetuity. Kennedy It seems to me it would affect Camerata's behavior and that of other child protective officers. The lawyer would explain now, legally this is not binding. This has never happened. But three judges of the court of appeals in a reasoned decision have explained why this is contrary to the Constitution. It would seem to me that any conscientious law enforcement officer would take that seriously into account. I think that's absolutely right, Justice Kennedy. Scalia Why? What's the test? Isn't the test clearly established law? Would this be clearly established law under any conceivable interpretation of that? I think it's true that if this Court were to vacate the Ninth Circuit's constitutional ruling, Mr. Camerata and others who are similarly situated wouldn't face the very significant, concrete, perspective effect of this decision, which is to strip them of qualified immunity in future cases. They would be able to argue, as you are suggesting, that the law is not clearly established. At the same time You have very limited time. Could you go to the merits of the Fourth Amendment question and give us the government's position on that? Certainly, Justice Ginsburg. The Ninth Circuit in this case held that the temporary detention of a child in school to confirm or dispel suspicions that that child is being abused is unconstitutional unless the questioning officials have a warrant, probable cause, or parental consent. We think each of those requirements is unjustified as a matter of Fourth Amendment law and imposes a serious burden on the conduct of the government at the initial stages of a child abuse investigation. As the Court of Court Counsel, I'm interrupting you only for a quick reason. What's the test? Is it a question of whether the seizure is reasonable or not? That's correct, Justice Sotomayor. The question is reasonableness. So that would be your proposed test. If we were to say you don't need any of those three things right now, where would that leave us or leave the courts below on determining whether what happened here was reasonable or not? Meaning, what if a child is called in and says, I don't want to talk to you without my mom, and they continue to speak to the child? Is that reasonable? I think that the answer is that would go to the question of the manner in which the interview is conducted, as opposed to whether it's reasonable at its inception. Sotomayor, how do we develop the law, or how do we help develop the law in this case if we answer your question but leave unanswered with no parameters, any idea because we have no set of facts, no one is going to review that question, of what is reasonable in this context? Well, the question that the Ninth Circuit answered in this case was a question that concerns the justification for the interview at its inception. The Ninth Circuit said a warrant, probable cause, or parental consent is required from the very outset. That would be true whether an interview lasted 2 hours or 10 minutes, whether the child was responsive, whether the child wasn't. Sotomayor, you see, that's the problem with taking up a case with no case in controversy, because what do we do? We don't remand for them to reach the second question, which is really the one that law enforcement needs some help on. Well, I would disagree with that proposition. I think law enforcement very much needs help on the question that the Ninth Circuit actually decided, because the warrant or probable cause requirement is one that has a very significant effect on the way that they carry out their very important business in this area. If the Court has no further questions. Roberts, thank you, counsel. Ms. Kubitschek. Thank you. Mr. Chief Justice, may it please the Court, there is no case of controversy between SG and the Petitioners. That ended when you were here. You are not challenging the qualified immunity ruling. Precisely. Why didn't you just go away? Mr. Chief Justice, we are not here voluntarily. No, I know that, but why? I do know that. But on the other hand, you had no you could have filed a paper saying we have no continuing interest in the case, but you haven't done that. You fought the legal issues on merits in an area where it's been suggested you don't have a stake. SG does not have a legally cognizable stake, Your Honor. She won a moral victory when she obtained a ruling in her favor on the Fourth Amendment claim in the Ninth Circuit, but as this Court said in Hewitt v. Helms, a moral victory is no victory at all, but. So you have no objection if we entered a Muncie Ware order vacating the decision of the Ninth Circuit on the merits of the dispute? Well, Your Honor, the we would submit that the Muncie Ware test would not apply in this case because Muncie Ware, which permitted vacating a decision when it became moot, talked about decisions which become moot through happenstance. And the reason for that is because of preclusion. I'm sorry. I'm sorry. Again, I get to the question, why do you care? Why do you care whether we vacate the order or not? Your position is your client has no continuing interest in the case. Our client has no legally binding, legally cognizable interest in the case. She has an interest in protecting her moral victory as do and in the issue as do the many amici who file briefs. She is asserting the interest of others, children who will be in the situation that she was once in, but no longer. But we have said that the plaintiff herself must have a live controversy, and there was no class action here. That is correct, Justice Ginsburg. She does not have an interest, and the case is moot. You want to have the Fourth Amendment decision preserved and have it govern an enormous chunk of the country so that all the States in the Ninth Circuit have to comply with it, and anybody, any individual officer who doesn't comply with it would do so on pain of personal liability, but you don't want that groundbreaking decision to be subject to review by this Court on the merits. Is that a summary of what you want, and does that make any sense? Your Honor, the case, if the case is truly as important to other employees of the States within the confines of the Ninth Circuit, it will arise again, and this Court will have the opportunity to decide the issue again between parties who have a live stake in the issue, or it will arise in another circuit and it will present a live controversy between parties who have a stake. So you want us to munching where? You don't want us just to leave it sitting because there's no controversy. You want us to erase that holding below, right? No, Your Honor. We would not ask that the holding below be erased. Well, then the answer you just gave doesn't make any sense. You say it can, you know, it can arise again. That would be the answer of someone who wants us to eliminate the holding here. Don't worry. It will come up again in a context where, on appeal, somebody will have an interest in arguing to sustain it, but that interest doesn't exist here. But that's the argument you're making. That's the argument of someone who wants us to munching where. I'm sorry, Your Honor. I misspoke. It will come up, if it is as — if the practice is as widespread as the Petitioner's claim, it will come up again in other circuits and this Court will have the opportunity to resume it. Well, but Justice Alito's question was addressed to the Ninth Circuit. In the Ninth Circuit, it's not going to come up again if we assume that our public employees are going to be law-abiding. They're bound by this in the Ninth Circuit. Well, Your Honor, I guess that's not true. And you want them to be bound, yet you say there's — that the case has moved. I just don't understand it. Well, Your Honor, that leads to the question of what exactly are they bound by. And our reading of the court of appeals' decision is not nearly as broad as the Petitioner's reading. The court of appeals said specifically, are caseworkers and police officers always allowed to question children in a protractive custodial setting? Where are you reading the holding of the court of appeals? Because I was under the impression that they did say, there's only three ways. One is you get a warrant, another is you get parental consent, and the third is exigent circumstances. I thought that was the ruling of law by the Ninth Circuit. That was the ruling as it applied to SG herself, Justice Ginsburg. This was not a class-action lawsuit, and the court was deciding what happened to one 9-year-old child on February 24, 2003. Let's see whether they — I thought that, yes, the case is about a single plaintiff, it's not a class-action, but they're making a rule of law. What does the Fourth Amendment require? Okay. On page 1022, Your Honor, it says, We consider the relatively straightforward question whether an in-school seizure and interrogation of a suspected child abuse victim is always permissible under the Fourth Amendment without probable cause and a warrant or the equivalent of a warrant. And the court said, no, not always, and not in this case. And if this Court does reach the merits of this case, we would ask this Court to uphold a rule stating that a protracted custodial interview of a child by police and child welfare investigators is presumptively unconstitutional unless they have a warrant or court order or parental consent or exigent circumstances. Alito What is there in the Ninth Circuit's opinion which generally requires a warrant to suggest that the length of the interrogation was relevant to their decision? The police and the child protective services need to decide whether they need a warrant before they begin the questioning, no matter how long it's going to last. Where does it say that the length is relevant to the issue that they decided? Well, Your Honor, the length of the questioning has been historically important to this Court's jurisprudence. It distinguishes, for example, between a Terry stop and a seizure. And this Court said, for example, in the United States against Place, that a 90-minute detention falls out of the realm of a Terry stop and into the realm of a seizure for which full Fourth Amendment protections are required of a criminal suspect. And this Court has also said in Soldall v. Cook County that it would be anomalous if people who are not suspected of any wrongdoing at all had fewer Fourth Amendment protections than. Scalia, I don't understand. It seems like a very strange rule to me. You mean it's okay for a child protection worker to just ask the child, passing in the hall, you know, has your or not passing in the hall, come into this room, I have a question for you, has your father been abusing you? And if the child says yes, thank you, and the child goes, then that's okay, because it was a short interview. And the – I didn't mean to – that the length of the interview is the only factor, Your Honor. One of the other factors is that the seizure is determined by the facts that the police and child welfare worker remove the child or remove any individual from the place where she is. Right. And bring her into a room. I said that. But once they take her in a room, it depends on how long the interview is. Is that right? That goes to the question of whether or not there was a seizure. And in this case, it was stipulated that there was a seizure. We're talking about rules for the future. We're not talking about this case. And you're asking us to adopt a rule for the future that says if it's very brief, it's okay, but if it's longer, it isn't okay. Right? That's what you want us to adopt. That if it were very brief and the child was not removed from her classroom. No, no, no, no, no. Removed. There has been a seizure, but it's been a very brief seizure, just as a Terry stop is a very brief seizure. Our position would be that because of the importance of consent here to a seizure, that there would need to be a court order to remove a child from her classroom and to take her to another room. On the issue of. Or parental consent. So you're changing your position. You need a court order to write out a brief. Is that it? I think that has been our position, and I'm sorry if I didn't make it clear. Alito, on the issue of consent, do you read the Ninth Circuit's opinion as having an age limit? Suppose that the child is, let's say, 16 years old. Is the child at 16 incapable of consenting to questioning? Well, the way that we read the court of appeals decision and the rule that we would ask this Court to adopt, that is, a seizure and for a custodial interrogation is presumptively unreasonable without parental consent or a court order, leads open the possibility that there are, in fact, some children who are of suitable age and discretion to knowingly make a decision whether or not to talk to an armed police officer and a caseworker without the parents having to make it for them. But you don't have to make it for them. Sotomayor, I just want to make sure I understand your position. Answering Justice Scalia's question, the child walks into the room, is taken out of the classroom, walks into the room, the officer says, we've heard that your mommy and daddy are doing some things to your private parts, is that true? And the child says, 9-year-old child says, I wish somebody had asked me before. I'm so afraid of my daddy. He does these horrible things to me. Are you seriously suggesting that if the police stay there for an hour debriefing that child as to the circumstances of that situation, that that's a seizure? It seems to me that it's a seizure. Yes, but that would have exigent circumstances, and that would get it out of the  Sotomayor, but what does that have to do or change, the police bringing a child into a room and just asking the question? When does that's what you seem to have said to Justice Scalia, which is that the mere removal from the classroom is the defining feature of seizure. So it can't be that. They don't know if there's exigent circumstances until they ask the question. You've got a stipulation that there was a seizure. So you didn't, there was never any argument, that was not at issue in this case. Given that there was a seizure, the question is, is it reasonable? Many of the questions have gone to police. But this was initially a social worker's investigation. And you said when stating what the Ninth Circuit's rule was, that police in combination with caseworker. Suppose we took Alford out of the picture, and he didn't even utter a word in the interview. Suppose we take the sheriff's, deputy sheriff, out. The only one who comes to the school and asks to talk to this child is the caseworker from the Department of Health. Well, it would depend on, I think, the larger picture, whether or not there was police entanglement, as this Court ruled in Ferguson against the city of Charleston. In this particular case, the police. Ginsburg-McCabeny If you, if the information elicited from the child is that she has been abused by her father, then there is a likelihood that there will be police interest in that. Well, and this Court recognized also that possibility in Ferguson against the city of Charleston that the nurses at the hospital would call child protective services. But the, the, you have to look at it from the beginning, and in this case, the case began when, on February 10th, when the police got involved. The police did not report the matter to the child protective investigator until 10 days later, and then they went out together. Subsequently, the child protective investigator testified before a grand jury as part of the ongoing law enforcement investigation. And in fact, when he was questioned at his deposition, Petitioner Alford said that his reason for being at the school was for law enforcement purposes. Alito What is your answer to Justice Ginsburg's question? Suppose it was just Mr. Camretta, or suppose it was the school nurse, would the answer be the same? No, it would not be the same if it was the school nurse or Mr. Camretta. And the reason is that the school nurse is part of the school administration, and the school has an obligation and the authority under TLO Act and in Earls to make rules and carry out procedures that will protect the children of the school and promote learning. And if the child comes to the school and the school nurse is not there, then the child If Mr. Camretta came in from the outside, he would not fall within the TLO rule, because in TLO, this Court said specifically that the ruling does not apply to individuals such as police officers who come from the outside in order to protect the children deal with situations that are not related to the school, and nobody is saying that S.G. was abused while she was at the school. So the circumstance, was there a seizure? No, no, no, professor, no policeman, school nurse. The school nurse. Seizure? Probably not a seizure. And so it's not a seizure if exactly the same thing happens, but there's no outside person there, but it is a seizure if there's an outside person. If the outside person comes into the school. That's the rule as to whether there's a seizure. That's one of the factors to look at. No, no, no. Whether there's a seizure. Yes. Okay. What makes it a seizure? Go inside and speak to the principal. I saw you push the child at recess. We want to find out who was pushing you. Go inside and talk to the principal. Seizure? Your Honor, I believe that it would be considered a seizure, although that's not our case. Everybody's going to stay for 5 minutes after class, too much talking today. Seizure? That, Your Honor, it might be a seizure. Again, that's the LO. Well, that's what I need to know, because I don't see, if there's no seizure, how it could have been an unreasonable thing to do, if there isn't even a seizure. If the caseworker comes to the school under circumstances where a child would feel free to leave or not be told. You're not free to leave class. Well, Your Honor, that's the children, this is correct, children have lesser expectations of privacy. But when they are forcibly taken out of class and moved to another location. Go to the principal's office. Too much talking. That would be, Your Honor, if that is a seizure, it would fall within TLO, precisely within TLO. Whereas. If you send her to the school nurse, it's not a seizure. But if the school doesn't have a nurse and it brings in a nurse from the outside and says, you know, we think you have some contagious disease, we'd like you to speak to this, then it becomes a seizure. Well, Your Honor, the TLO framework would certainly apply in that situation where you have a child who has a potentially contagious disease, then the analysis would follow TLO. It's not contagious. It's just a disease that's going to kill this child and nobody else. Okay? Your Honor, that certainly would also fall within the TLO. Okay. Special needs. So why doesn't it likewise, it's not a nurse, but it's a social worker who's brought in to interrogate the child about something else that is going to very much harm that child? Why is that any different? Well, Your Honor, because child welfare investigations are also harmful to children. And when a child is asked, interrogated about whether or not her father touches her inappropriately, that's not a neutral action. Whether or not she has been abused, that causes trauma. Sotomayor It has nothing to do with whether there's a seizure, nothing whatever to do with whether there's a seizure. The questions you ask after the seizure don't make it a seizure or make it not a seizure, do they? They affect the constitutionality of the interaction between the child and the government. Sotomayor Doesn't that go to the question of the reasonableness of the scope of the seizure? Don't we have Litzter and other jurisprudence that basically addresses this question and says, is this type of seizure or stop, detention, reasonable? And it's hard to swallow that if a police officer asks a child, are you being abused, and the child says, yes, I need help, it is nearly impossible to think that that seizure is unreasonable. It may well be that 2 hours for a protesting child would be, but isn't that all subject to a question of reasonableness as to the scope of the seizure? Sotomayor Well, Your Honor, because Scalia She's helping you, I think. Sotomayor I'm sorry? Scalia She's helping you, I think. But that goes to the reasonableness of the seizure. I was asking you about whether there has been a seizure. Step one, has there been a seizure? And you're saying that in a lot of these situations there simply hasn't been a seizure. Now, once there is a seizure, then we can inquire to whether it's unreasonable or not. But those are two distinct questions, and we've been discussing the mere existence of a seizure. Now, true, in this case it was already conceded, but you're asking us to adopt a rule for future cases, and we can't adopt a rule for future cases until we know what we're talking about when we talk about a seizure. He was not trying to help you. I'm aware of that. But, you know, that again is perhaps a good reason why this Court should not reach the merits of the Fourth Amendment question, because in this particular case it was in the case that the normal development of facts, which, as Justice Scalia, you've pointed out, whether or not there is a seizure is certainly dependent on the individual facts of the encounter between the individual child and the individual police officer. Those facts were not developed. Roberts. So that's your argument again that we shouldn't reach the merits? That's correct. Now, do you agree that if we vacate the court of appeals' decision on the merits, that if Camreda did exactly what he did in this case again, that he would not face personal liability? If you vacate the decision on the merits, then that cannot be used to establish that there is clearly established law, and in the absence of clearly established law, he cannot be found personally liable. That would be correct. So that if he did exactly the same thing, he would still be entitled to qualified immunity. He would still be entitled to qualified immunity, but if this Court were to vacate, this Court would be effectively telling lower courts that they should not follow the Pearson sequence ever, because if they — if the lower court reaches a constitutional issue and then rules that the defendant has qualified immunity, which Pearson said that they could do, that this Court would then say, no, don't reach the merits. Scalia Not always. Not always. Only when there is no longer a case of controversy. In many cases, there will still be a case of controversy. It will be something that could be replicated again in the future for some other reason. It isn't true that it will just eliminate the whole purpose of our jurisprudence in this area. In many cases, the decision below can be appealed, and we will rule on that.  But that's a different argument on the constitutional question. Parsons Which is that's correct. Scalia But you're moved away. I mean, if, you know, it's a different situation. Parsons It's a different situation, but if they're in the situations where individual defendants have qualified immunity, it has been the procedure in this Court, not only since Pearson, but really going all the way back to Siegert v. Gilly in 1991, where the Court recommended that the lower courts reach the constitutional  In Siegert, they – this Court said that they can. In County of Sacramento v. Lewis, this Court said that they – it's the better approach. Alito Well, you could have cross-petitioned in an effort to get damages. So if you had wanted to preserve the issue, you surely could have done that, couldn't you? Parsons S.G. could have cross-petitioned, but she decided not to. Kennedy But then we would have had a case. Kennedy But there's nothing in the record to indicate that you're withdrawing your Monell action against the municipality, is there? Parsons The Monell action against the municipality was dismissed on the fact that it was denied without prejudice to reinstate after this Court ruled that it was denied without prejudice to reinstate. Kennedy All right. So it's still alive. Parsons It's still alive. Kennedy And there's nothing in the record to indicate that you won't ask that it be reinstated. Parsons That's correct. Kagan So what happens to different parties, Ms. Kubitschek? Parsons That is against Deschutes County, Justice Kagan. Roberts But who's on the other side of the county? Parsons I'm sorry? Who's on the other side? Roberts The claim pending below involves which two parties? Parsons Oh, it involves S.G. and the county. Roberts So that is the claim that is alive? Parsons The claim that is alive involves different incidents, incidents that took place in March of 2003, not the case that is alive. Roberts Does the decision on the merits here have any relevance whatever to the action that's still pending? Parsons No. Roberts So you agree that if this is vacated, if we vacate the decision on the merits, that's of no meaning whatever in the pending action below? Parsons It would not have an effect on the action. Breyer Suppose that we dismiss the case as improvidently granted while indicating in an opinion some of the questions that we find difficult, such, for example, as the seizure question, et cetera. What kind of impact would that have in your opinion? Parsons If the Court were to dismiss the case as improvidently granted? Breyer Yes, while indicating the reasons being, in part, that there are difficult questions here suggesting what they are. What would the impact would that have? Parsons Well, Your Honor, we would hope it would have some impact at least on the Petitioner's position. The Petitioner's position, as stated in their brief, that all seizures of children to investigate child abuse are constitutional at their inception, meaning there are no limits, there are no constraints on what a child would do. Ginsburg It wouldn't affect your client in any way because she's out of it, and you were candid from the beginning to say, as far as she's concerned, this is a moot case. But as far as Camretta and the other offices are concerned, we were told by Oregon's representative that they are not — that they have tailored their behavior to conform to this decision. So we would hope it would have some impact at least on the Petitioner's  Parsons And, Your Honor, that would be — to tell the officials who investigate child abuse that in the name of protecting children, they do not have free reign to do anything and everything that they think is appropriate, because what they do harms children, including the very children they claim to be trying to protect. As Justice Breyer said, even raising those questions would be beneficial to children who are forced to undergo child abuse investigations, 75 percent of whom have not been abused at all, and who find the experience psychologically traumatic. If you were just making an argument on something that you've already told us you have no cognizable legal interest in, correct? Correct. If you were designing what you would regard as an ideal system, and you're very knowledgeable in this area, and you concluded that some kind of approval by a detached individual should be required before something like this is allowed, would you set the standard at probable cause? Would you say that the Child Protective Service has to have probable cause that there's abuse before they can question the child to find out whether there was abuse, or would you set it at some lower level? Well, in fact, Your Honor, the — most of the States have a procedure for seeking court approval, and they're — they differ in whether they require probable cause or reasonable suspicion or something like reasonable cause. And so while we put in our brief that the seizure of S.G. should have been based upon probable cause, given the law enforcement component, if there was — if Alford, the deputy sheriff, were not there at all, and it was purely a child welfare seizure, and the child welfare caseworker were going to a juvenile court judge and seeking some kind of judicial approval, the — because the laws of the States differ between reasonable suspicion and probable cause, I would suggest that it — the better course would be to let this play itself out between those two legal standards. Thank you, counsel. Thank you. General Kroger, you have 4 minutes remaining. Mr. Chief Justice, and may it please the Court. General, just a point of clarification before you go on. You said earlier that your office had advised the county not to seize children. Does that mean they're not talking to children at all? You used the word seized. Are you advising them that they don't have the right to talk to children without their parental consent or warrant? No, Your Honor, but they would have to talk to children in a way which runs no risk of being found of seizing the children within the meaning of the Ninth Circuit. Talk to them walking along the hall in the school, right? Just come up alongside. By the way, I wanted to ask you whether your father is going to do that. Yes, Your Honor, and you can see the problem which the Ninth Circuit decision causes practically on the child welfare system of the State of Oregon. Mr. Camretta and other child protective services workers under the Ninth Circuit decision face an enormous burden. In most of these cases, it is impossible to establish probable cause to get a warrant without first speaking to the child, because the child is usually the only witness that is available to the government. And so to require, as the Ninth Circuit has here, that we obtain a warrant prior to even speaking to a child victim places the standard. Sotomayor, I mean, I just assume you're not suggesting that this procedure could be used with every child in every school without some ground for suspicion, correct? No, Your Honor. We believe that reasonable suspicion is the proper basis before making a seizure of a child to conduct one of these inquiries. Significant here in Griffin and subsequent cases like Lidster, the Court has recognized that the relationship between the State and the person being searched or seized is significant to the reasonableness analysis. And here, it is not an adversarial relationship. The child and the State share a significant interest in making sure that that child is safe. And were the government to continue to be put in the position of not being able to speak to a child until probable cause has developed in some other way, children will continue to be placed at risk. But, General, I take it that that problem disappears. Tell me if I'm wrong. If we find there's no jurisdiction, if we months and wear this case, the decision is wiped off the books, you return to status quo ante, and you tell all your people that they can do what they would have done beforehand, is that right? That is correct, Your Honor. That would be a significant step forward for Mr. Camretta and others similarly placed. The challenge is that those kind of claims, then, would be perpetually subject to qualified immunity because the law would not be clarified. Would you or you – and then I guess what I'm asking is, let's assume we go ex ante. At any moment that an agency speaks to a child, they can move from a non-seizure to a seizure, correct? And some seizures can be reasonable and some can't, right? That's correct, Your Honor. And law enforcement is never going to know where that line of reasonableness or unreasonableness is. Is that correct? That's in the nature of doing this without a warrant, isn't it? Yes, Your Honor. That's part of the reason we agreed that a seizure was committed here, so that law enforcement are not placed in a difficult position every time they speak to a child trying to make their own determination. They do it anyway. Meaning, even if we say that they can seize the child, you would still have to not do a seizure that was unreasonable. You wouldn't in scope. They can't speak to the child endlessly, can they? No, Your Honor, that's correct. The government officials will have to conduct that seizure in a reasonable manner for a reasonable duration. That's different, I think, though, Your Honor, than the threshold question, if they start to talk to a child, of trying to judge in the middle of an interview, have we gone too far, has a seizure occurred? I'm not quite sure why you stipulated to a seizure in this case, but that was your strategic choice. Mr. Chief Justice, the question is whether vacating the decision will have an impact on the litigation below, and it will. The Respondent is seeking to preserve the Ninth Circuit decision precisely to aid the Fourth Amendment claim that the Respondent is making against Deschutes County. And thus, this is somewhat analogous to the situation in the Pacific Bell case, where you have a Petitioner and Respondent seeking different remedies from this Court in light of the impact that it will have on subsequent litigation. Mr. Chief Justice, the question is whether vacating the decision will have an impact on the litigation below, and it will. And thus, this is somewhat analogous to the situation in the Pacific Bell case, where you have a Petitioner and Respondent seeking different remedies from this Court in light of the impact that it will have on subsequent litigation. Roberts. Mr. Chief Justice, the question is whether vacating the decision will have an impact on the litigation below, and it will.      where you have a Petitioner and Respondent seeking different remedies from this